IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT E. SMITH, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 21-cv-2516 |
| WASTE MANAGEMENT OF KANSAS, INC., | ) ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

The plaintiff, Robert E. Smith, states and alleges the following claims for relief against the defendant, Waste Management of Kansas, Inc.

## JURISDICTION AND VENUE

1.  This is an employment case based upon and arising under 42 U.S.C § 1981. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C § 1331. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C §1391(b)-(c).

## PARTIES

2.  The plaintiff, Robert E. Smith, is African American, and he resides in Topeka, Kansas. Mr. Smith was employed by Waste Management of Kansas, Inc., for thirteen years and seven months before his termination on May 18, 2021.

3.  The corporate defendant, Waste Management of Kansas, Inc. (Waste Management), is a corporation with its principal place of business in Houston, Texas.

1

Waste Management owns and operates Rolling Meadows Landfill and Recycling Center in Topeka, Kansas (Rolling Meadows).

## FACTUAL ALLEGATIONS

4. Mr. Smith, during most of his employment with Waste Management, worked at the Rolling Meadows landfill as the lead heavy equipment operator.

5. During most of his employment with Waste Management, Mr. Smith was subjected to a racially hostile, intimidating, and offensive work environment. For example, Mr. Smith was addressed in a mocking and discriminatory manner by his local supervisors and by his co-workers. Terms such as "Yessum Boss" were used, on several occasions, by his co-workers. In addition, Mr. Smith's supervisor addressed him as "bitch"; danced in front of him in a mocking manner; and played racially derogatory videos.

6. During the 2020 presidential election, an offensive printed document was taped to Mr. Smith's personal locker at the work site. This document stated: "Give a black man a fish and he will eat for a day. Give a black man a free cell phone, food stamps, section 8 housing, a six pack of beer and he'll vote Democrat the rest of his life."

7. Mr. Smith complained to the local Human Resources Department about the racially hostile work environment to which he was subjected. However, the Human Resources Department failed to take reasonable remedial action in response to Mr. Smith's complaints. For example, they failed to investigate the racially discriminatory conduct reported by Mr. Smith, and they refused to provide him with documentation of his reports.

8. Mr. Smith, for most of his employment with Waste Management, experienced racial discrimination, and was subjected to less favorable treatment than his

white peers. For example, Mr. Smith frequently complained to his local supervisors about the unsafe operations practiced by his white co-workers, particularly Daniel Rohrer. However, his local supervisors only told Mr. Smith to "stop nit picking."  In February of 2021, Mr. Smith complained to his regional supervisor about the unsafe operations practiced by Mr. Rohrer, and about the resulting damage to the company's equipment. Again, Mr. Smith's complaints were ignored.

9. On May 4, 2021, Mr. Rohrer backed a compactor which he was driving into a dozer which Mr. Smith was driving. Both workers saw no damage to the operating equipment; decided to continue with their work; and did not file an incident report. This was a routine practice amongst operators, and it did not seem out of the ordinary to Mr. Smith.

10. On May 12, 2021, Mr. Smith was interrogated by his local supervisor about the incident with Mr. Rohrer. His supervisor said the incident would need to be investigated, as there is an automatic termination rule for metal-to-metal collisions.

11. On May 18, 2021, Mr. Smith was terminated from his employment with Waste Management by his local supervisor and by his regional supervisor. The ostensible reason given for his termination was that "you were involved in an accident which you collided with a compactor as you were operating a dozer at the same time as another operator."  However, the other operator, Mr. Rohrer, was not terminated from his employment.

## COUNT I: HOSTILE WORK ENVIRONMENT

12. The above paragraphs are incorporated herein by reference.

13. As described above, Waste Management subjected Mr. Smith to a hostile, intimidating, and offensive work environment on the basis of his race.

14. Waste Management's management team and Human Resources Department failed to take reasonable remedial action to address the racially hostile work environment to which Mr. Smith was subjected. This racially hostile work environment violated 42 U.S.C. §1981.

15. As a result of the racially hostile work environment to which Mr. Smith was subjected, he suffered damages in the form of loss of compensation, emotional distress, mental anguish, and loss of enjoyment of life.

16. In subjecting Mr. Smith to a racially hostile work environment, Waste Management acted with malice or with reckless indifference to his federally protected rights. Consequently, Waste Management is liable for punitive damages.

17. Wherefore, Mr. Smith prays for judgment against Waste Management for damages in excess of $100,000.00, consisting of loss of compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

## **COUNT II: RETALIATION**

18. The above paragraphs are incorporated herein by reference.

19. Mr. Smith engaged in a protected activity under 42 U.S.C. §1981 by complaining to Waste Management's Human Resources Department, and by opposing what he, in good faith, believed to be racial discrimination.

20. Waste Management retaliated against Mr. Smith for engaging in protected activities in violation of 42 U.S.C. §1981. This retaliation included hindering Mr. Smith's efforts to effectively fulfill his job duties, and terminating him from his employment.

21. As a result of Waste Management's retaliatory conduct, Mr. Smith has suffered damages in the form of loss of compensation, emotional distress, mental anguish, and loss of enjoyment of life.

22. In retaliating against Mr. Smith, Waste Management acted with malice or with reckless indifference to his federally protected rights. Consequently, Waste Management is liable for punitive damages.

23. Wherefore, Mr. Smith prays for judgment against Waste Management for damages in excess of $100,000.00, consisting of loss of compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT III: RACIAL DISCRIMINATION

24. The above paragraphs are incorporated herein by reference.

25. Waste Management discriminated against Mr. Smith because of his race by treating him less favorably than similarly situated white employees. This disparate treatment included terminating his employment. Waste Management's conduct violated 42 U.S.C. §1981.

26. As a result of the racial discrimination by Waste Management, Mr. Smith has suffered damages in the form of loss of compensation, emotional distress, mental anguish, and loss of enjoyment of life.

27.    In subjecting Mr. Smith to racial discrimination, Waste Management acted with malice or with reckless indifference to his federally protected rights. Consequently, Waste Management is liable for punitive damages.

Wherefore, Mr. Smith prays for judgment against Waste Management for their damages in excess of $100,000.00, consisting of loss of compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

Respectfully Submitted,

> SLOAN, EISENBARTH, GLASSMAN
> McENTIRE & JARBOE, L.L.C.
>
> BY: /s/Alan V. Johnson
>     Alan V. Johnson, KS #9992
>     ajohnson@sloanlawfirm.com
>     534 South Kansas Avenue, Suite 1000
>     Topeka, Kansas 66603-3456
>     785-357-6311
>     Attorneys for Plaintiff

## **REQUEST FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## **DESIGNATION OF PLACE OF TRIAL**

The plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above captioned matter.

                Respectfully Submitted,

                SLOAN, EISENBARTH, GLASSMAN
                McENTIRE & JARBOE, L.L.C.

                BY: /s/Alan V. Johnson
                      Alan V. Johnson, KS #9992
                      ajohnson@sloanlawfirm.com
                      534 South Kansas Avenue, Suite 1000
                      Topeka, Kansas 66603-3456
                      785-357-6311
                      Attorneys for Plaintiff